## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| VERNON E. LONDAGIN, JR., | **Cause No. CV-22-15-BU-BMM** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Vernon Londagin ("Londagin") brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant"). (Doc. 1.) Londagin is a forty-year-old combat veteran who left the military in 2011 after over eight years of service, due to back, spinal, and shoulder problems and PTSD. (Doc. 9 at 2.) Londagin was denied disability benefits at the initial and reconsideration levels. (*Id.* at 2.) The Administrative Law Judge ("ALJ") issued an unfavorable decision on September 27,

1

2021. (*Id.*) The Appeals Council denied Londagin's request for review and adopted the ALJ's decision on January 7, 2022. (*Id.*)

Londagin filed an opening brief on June 29, 2022. (Doc. 8.) Londagin asks the Court to grant summary judgment in his favor, and reverse and remand the decision of the ALJ to the Commissioner for an immediate award of benefits. (*Id.* at 32.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Londagin resides in Butte-Silver Bow County, Montana. 29 U.S.C. § 1391(e)(1).

## PROCEDURAL BACKGROUND

Londagin filed an original disability claim with the Department of Veterans Affairs ("VA") on October 6, 1010. The VA awarded Londagin a 100 percent service-connected disability rating on September 9, 2018. (Doc. 4 at 406.) The VA determined that the following nine conditions contributed to Londagin's disability: (1) PTSD (70% rating); (2) cervical spondylolysis with degenerative disk disease, intervertebral disc syndrome, herniated disc, status post-disectomy and fusion with radiculopathy (60%); (3) right cubital tunnel syndrome and carpal tunnel syndrome (30%); (4) lumbar spine degenerative disc disease (20%); (5) left cubital tunnel syndrome and carpal tunnel syndrome (20%); (6) left patella tendonitis and knee strain with

2

degenerative joint disease (10%); (7) left patella tendonitis and knee strain with degenerative joint disease (10%); (8) left wrist strain (10%); and (9) right wrist strain (10%). (*Id.* at 408–11.) The VA determination letter states that Londagin became "totally and permanently disabled due to [his] service-connected disabilities" on June 12, 2016. (*Id.* at 406.)

Londagin alleges that he has been unable to work due to his disabilities since June 25, 2018. (Doc. 8 at 2.) Londagin filed a Title II application for Social Security disability benefits on August 17, 2018. (*Id.*) The ALJ recognized that Londagin had "severe" impairments stemming from his service in the armed forces, including "lumbar and cervical degenerative disc disease status post fusion surgeries," obesity, and a bilateral shoulder impairment. (*Id.* at 45–46.) The ALJ decided, however, that Londagin's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x. 1. (*Id.* at 49.) The ALJ found that Londagin maintained the residual functional capacity to perform light work with some limitations and that jobs exist in significant numbers in the national economy that Londagin could perform. (*Id.* at 50–55.)

The ALJ concluded that Londagin was not disabled as defined in the Social Security Act from the date he was last insured through the date of the ALJ decision.

(*Id.* at 56.) The Appeals Council denied Londagin's appeal on January 7, 2022. (*Id.* at 9.) Londagin subsequently filed this action on June 29, 2022. (Doc. 1.)

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates the following two elements by a preponderance of the evidence: (1) the claimant possesses a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and

work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382a(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### A. The ALJ's Determination

The ALJ followed the 5-step sequential evaluation process in evaluating Londagin's claim. At step one, the ALJ found that Londagin had not engaged in substantial gainful activity from his alleged onset date of June 25, 2018, through his date last insured of March 31, 2021. (Doc. 4 at 45.)

At step two, the ALJ found that Londagin had the following severe impairments: lumbar and cervical degenerative disc disease status post fusion surgeries, obesity, and a bilateral shoulder impairment. (*Id.*) The ALJ found that Londagin's mental impairments—depression and post-traumatic stress disorder ("PTSD")—were nonsevere because they caused no more than minimal limitation in his ability to perform basic mental work activities. (*Id.* at 46.) At step three, the ALJ found that Londagin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id*. at 49.)

At step four, the ALJ found that Londagin could not perform his past relevant work as a cost estimator, a help desk person, and a security clerk. (*Id.* at 54.)  The ALJ

found at step five, however, that jobs exist in significant numbers in the national economy that Londagin can perform. (*Id.* at 55.) The ALJ determined that Londagin was not disabled, as defined in the Social Security Act, from the alleged onset date through the date last insured. (*Id.* at 56.)

## B. Londagin's Position

Londagin asserts that the ALJ erred at Step 3, Step 4, and Step 5 in the following ways: (1) assigning insufficient weight to Londagin's 100 percent VA disability rating; (2) providing inadequate reasons for discounting Londagin's testimony, and instead substituting the ALJ's lay opinion for the physicians' opinions and posing inaccurate hypothetical questions to the Vocational Expert ("VE"); (3) failing to consider the side effects of Londagin's medications; and (4) failing to consider fully Londagin's mental impairments. (Doc. 8 at 1–2, 18.)

## C. Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ properly concluded that Londagin was not disabled from June 25, 2018, the alleged onset date, through March 31, 2021, the date last insured. (Doc. 9 at 15.) The Commissioner argues, alternatively, that a remand for further proceedings would constitute the appropriate remedy if the Court determines that the ALJ committed an error in the analysis. (*Id.*)

## DISCUSSION

Londagin argues that the ALJ erred in five distinct ways. For the reasons set forth below, the Court agrees that the ALJ misapplied the regulatory requirements at step three, raising serious questions about whether Londagin would qualify as disabled at step three. The Court determines additionally that the ALJ failed to consider all prior administrative medical findings; provided inadequate justification for finding unpersuasive the medical opinions of Dr. Beazley, Dr. Hutcheson, and Dr. Puthiamadathil; misinterpreted non-treatment considerations to discount Londagin's testimony; and failed to account for VE testimony demonstrating that Londagin's combination of impairments ruled out work. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the ALJ improperly denied Plaintiff's claim for disability benefits, warranting reversal and an award of benefits. It proves unnecessary to address Plaintiff's alternative arguments.

### I.    Whether the ALJ Committed Legal Error at Step Three.

#### A. Legal Standard.

A conclusive presumption of disability applies if a claimant meets or equals one of the listed impairments at step three of the five-step analysis for determining whether an individual is "disabled." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet all of the

8

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To demonstrate medical equivalence, the claimant must have impairments considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The Ninth Circuit requires that the ALJ evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). The claimant bears the burden to present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

**B. Application to Londagin's Claim.**

Londagin challenges the ALJ's determination that he did not meet or equal any of listings 1.15, 1.16, or 1.18. (Doc. 8 at 18.) The ALJ found that Londagin did not meet listing 1.15 (skeletal spinal disorders), 1.16 (lumbar spinal stenosis), or 1.18 (major joint abnormality in any extremity). (Doc. 4 at 49.) The ALJ cited evidence in the medical record that Londagin's gait was normal, that he was able to lift and carry light objects, and that he had normal "fine and gross manipulative abilities." (*Id.*)

This determination misapplies the legal requirements of listings. For each of the three listings at issue, federal regulations set out four concurrent requirements. The final prong requires that the claimant's impairment have lasted or be expected to last for at least 12 months. 20 C.F.R. pt. 404, subpt. P, app'x 1.15(D). The federal regulations provide multiple ways for claimants to satisfy the final prong. *Id.* The three options include the following methods: (1) a documented medical need for a bilateral mobility device that uses both hands, such as a manual wheelchair; (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, *and* a documented medical need for a mobility device involving the use of one hand (seated device such as a motorized wheelchair) or the other upper extremity (upright device); or (3) an "inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." 1.16(D) (the first two options from 1.15(D)); 1.18(D) (the same three options as 1.15(D)).

The ALJ's reasoning relates only to one of the multiple options for satisfying prong four. *See id.* 1.15(D)(2), 1.16(D)(2), 1.18(D)(2). Even if the ALJ correctly determined that Londagin did not meet (D)(2)'s requirements for any of the three listings, the ALJ erred by failing to consider whether Londagin could have satisfied

the fourth prong by meeting (D)(1) for any of the three listings, or (D)(3) for 1.15 or 1.18. Based on the presence of independent grounds for reversal and award of benefits, as discussed below, the Court declines to address the merits of whether Londagin meets any of the listings at step three.

## II.   Whether the ALJ Improperly Weighed Medical Opinions and Prior Administrative Medical Findings.

### A. Legal Standard.

An ALJ must do more than simply offer their conclusions. An ALJ's evaluation of medical evidence remains subject to the amended regulations pertaining to all claims filed after March 27, 2017. Under the new regulations, an ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017).

These regulations did away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct an ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion

or prior administrative medical finding." *Id.* §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920(a).

The new regulations require an ALJ to articulate how persuasive they find all of the medical opinions and prior administrative medical finding. *Id.* §§ 404.1520c(b), 416.920(b). The regulations set forth specific "articulation requirements" for an ALJ's evaluation of the medical opinion evidence. *Id.* An ALJ still must furnish "legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive." *Sollars v. Kijakazi*, No. CV-20-58-BU-BMM, 2021 WL 4963611, at *3 (D. Mont. Oct. 26, 2021) (citing *Beason v. Saul*, 2020 WL 606760, at *3 (C.D. Cal. Feb. 7, 2020)).

### B. Application to Londagin's Claim.

Londagin claims disability based on a compound set of symptoms including neck pain, back pain, bilateral shoulder pain, hip pain, bilateral knee pain, bilateral foot pain, headaches, depression, and PTSD. (Doc. 3 at 3–8.) The ALJ acknowledged Londagin's "medically determinable 'severe' impairments" and found that these "impairments could reasonably be expected to cause the alleged symptoms." (Doc. 4 at 51, 54.) The ALJ found further, however, that Londagin's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely

12

consistent with medical evidence and other evidence in the record." (*Id.* at 51.) The ALJ concluded that Londagin possesses "self-imposed limitations" rather than qualifying disabilities. (*Id.* at 54.) In making these findings, the ALJ considered the opinions of treating physicians, four state agency medical consultants, two consultative examiners, one medical expert, and testimonial evidence from Londagin and his wife. (*Id.* at 46–54.)

Prior Administrative Medical Findings.

Londagin argues that the ALJ failed to consider properly the evidence underlying his VA disability rating. (Doc. 12 at 2.) Prior administrative findings and decisions do not bind an ALJ. 20 C.F.R. § 404.1504. The amended regulations provide, however, that an ALJ must "consider *all* of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision []receive[d] as evidence in [a] claim." *Id.* § 404.1504(a)(1) (emphasis added).

The VA concluded that Londagin has qualified as "totally and permanently disabled" since June 12, 2016. (Doc. 4 at 406.) The VA based Londagin's 100 percent disability rating on an extensive medical record of the physical and mental disabilities Londagin sustained relating to his military service. (*Id.* at 414.) The VA determination letter lists the following sources of evidence: VA/DOD Joint Disability Evaluation Board Claim, received October 6, 2010; Pre-Discharge VCAA Notification and

13

Acknowledgment for DES purposes, received October 7, 2010; Physical Evaluation Board report, dated January 18, 2011; Medical Evaluation Board report, dated December 9, 2010; DES/DVA Mental Disorder Examination, dated April 5, 2011; DES/DVA General Medical Examination Addendum, dated March 4, 2011; DES/DVA General Medical Examination, dated October 26, 2010; and Service treatment records from April 2003 through January 2011. (*Id.*)

Nowhere did the ALJ cite or discuss any of the medical evidence relied upon by the VA. (*Id.* at 43–49.) This omission runs counter to the federal regulations' requirement that an ALJ "consider *all* of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision [received] as evidence in [a] claim." 20 C.F.R. § 404.1504(a)(1) (emphasis added). The ALJ erred in failing to consider the medical evidence underlying the VA's 100 percent disability rating for Londagin. *Id.*

Medical Opinions.

Medical records from treating physicians document Londagin's chronic musculoskeletal pain, lumbar and cervical degenerative disc disease, numerous surgeries, and severe mental impairments. Londagin underwent a failed fusion of his cervical spine, surgery to repair the cervical spine fusion, lumbar spine fusion, SI joint stabilization, and two carpal tunnel releases. (Doc. 4 at 708–09, 750–51, 1027–

14

29, 1030–35, 1077–79, 1474–78, 1483–84, 1489–90.) Treating surgeon Dr. Sharma noted in April 2020 that Londagin's neck pain persisted because of a cervical disc disorder at C4-C7 and recommended a neurostimulator. (*Id.* at 1068–70.) Treatment records from May 2020 confirm that Londagin's pain continued, with Dr. Russo at Montana Orthopedics and the pain clinic at St. James Hospital in Butte ordering treatments for Londagin's shoulders, neck, and back, including numerous steroid injections and ketamine infusions. (Doc. 8 at 15.) Treatment records also document Londagin's "chronic," "refractory," and "treatment resistant" mental impairments. (Doc 4. at 1874.)

The ALJ discounted the opinions of treating physicians, all four medical consultants, and one of the consultative examiners. (Doc. 4 at 46–54.) With respect to Londagin's neck, back, shoulder, hip, knee, and foot pain, the ALJ discounted improperly the findings, diagnoses, and objective results from multiple treating physicians. (*Id.* at 51–53.) The ALJ also rejected five of the seven opinion sources (consultative expert Dr. Puthiamadathil and State Agency medical consultants Dr. Beazley, Dr. Hutcheson, Dr. Leizer, and Dr. Jennings) as unpersuasive. (*Id.* at 46–54.) The five discounted opinion sources found a higher level of impairment than the two credited sources, Dr. Romano and Dr. Houston. (*Id.* at 46–49.) Of the two, only

Dr. Romano had examined Londagin; Dr. Houston served as a non-examining medical expert.

The ALJ failed to satisfy the consistency factor in rejecting the opinions of Dr. Beazley and Dr. Hutcheson. 20 C.F.R. §§ 404.1520c(a), 416.920(a). The ALJ found the doctors' opinions "unpersuasive" despite acknowledging both opinions to be "supported with explanations." (Doc. 4 at 53–54.) The ALJ stated that the record indicates that Londagin can "perform greater exertional work" than the work identified in Dr. Beazley and Dr. Hutchenson's opinions, because Londagin's "gait and strength were normal." (*Id.*)

The ALJ also failed to satisfy the supportability factor in rejecting the opinion of Dr. Puthiamadathil. 20 C.F.R. §§ 404.1520c(a), 416.920(a). The ALJ found Dr. Puthiamadathil's opinion "unpersuasive" because it was "not supported by [his] examination findings and [was] inconsistent with x-rays, MRIs, and treatment notes." (Doc. 4 at 54.) The ALJ stated that the record reflects that Londagin can perform more sitting, standing, and walking than Dr. Puthiamadathil's opinion indicated, on the basis that Londagin's "gait and strength were noted as normal." (*Id.*) This conclusion reflects the same language employed in the ALJ's rejection of Dr. Beazley and Dr. Hutcheson's opinions. (*Id.* at 53–54.) The ALJ provided a list of string cites to the administrative record in his analysis of each of the three doctors'

16

opinions. (*Id.*) The ALJ failed to provide a specific explanation, however, for how any of the cited exhibits related to the consistency or supportability articulation factors. (*Id.*) The ALJ failed to specify how evidence in the record proves inconsistent with Dr. Puthiamadathil's opinion. (*Id.* at 54.) The ALJ likewise offered no specific analysis for his conclusion that Dr. Beazley and Dr. Hutcheson's opinions lack supportability in the record. (*Id.* at 53–54.) The ALJ also neglected to discuss whether and how Dr. Puthiamadathil, Dr. Beazley, and Dr. Hutcheson's opinions are consistent with Londagin's daily activities. (*Id.*) Accordingly, the ALJ failed to satisfy the regulatory burden of providing "legally sufficient reasons supported by substantial evidence" for finding unpersuasive the opinions of Dr. Beazley, Dr. Hutcheson, and Puthiamadathil. 20 C.F.R. §§ 404.1520c(a), 416.920(a). *See also Sollars*, 2021 WL 4963611, at *3, 5; *Beason*, 2020 WL 606760, at *3.

     <u>Londagin's Testimony.</u>

     The ALJ afforded disproportionate weight to non-treatment considerations such as Plaintiff's purported ability to "perform many basic activities associated with work." (Doc. 4 at 51.) According to the ALJ, because Londagin "lives with his wife and children," "prepares meals," "attends church," "shops in stores and by phone," "watches television," "helps his children with their homeschooling," and "uses the computer," he is not disabled. (*Id.*) The ALJ found Londagin's daily activities to be

17

"inconsistent" with Londagin's "complaints of disabling symptoms and limitations." (*Id.*)

In weighing those non-treatment considerations, the ALJ failed to note that the record shows that Londagin requires his wife's assistance to shower, dress, and take medications. (*Id.* at 505–11.) It takes Londagin about thirty to forty-five minutes before he can get out of bed in the morning, "due to pain and numbness." (*Id.* at 505.) Londagin cannot stand for more than ten minutes. (*Id.* at 505–06.) Londagin must lie down for an hour in the morning and an hour in the afternoon in order to rest his back and neck. (*Id.*) Londagin does not drive. (*Id.* at 509.) Londagin requires help preparing meals. (*Id.* at 505.) Londagin experiences significant limitations in providing homeschooling support because of his pain and physical limitations. (*Id.* at 505–06.) Londagin's daily activities ultimately support, rather than undermine, Londagin's contention that he is disabled.

Vocational Expert.

The ALJ's determination disregarded testimony from the Vocational Expert ("VE") that captured Londagin's combination of impairments. The ALJ's first hypothetical involved a "light exertional category" with an ability to walk and stand for 4 hours and sit for 6 hours in an 8-hour day. (*Id.* at 124.) The VE identified three qualifying positions in the national economy based on this hypothetical. (*Id.* at 125.)

The ALJ's second hypothetical involved a "light exertional category" with an ability to walk and stand for 2 hours and sit for 6 hours in an 8-hour day. (*Id.* at 125–26.) The VE identified three qualifying positions. (*Id.* at 126.)

The ALJ's final hypothetical concerned a requirement for additional break times and/or missing more than two workdays in a typical work month, on at least an occasional basis. (*Id.* at 128.) The VE testified that these requirements would "lead to termination or rule out work." (*Id.*) Londagin's counsel posed a hypothetical to the VE involving a need to take breaks from sitting every 15 to 20 minutes. (*Id.* at 129–30.) The VE stated that this requirement would rule out work. (*Id.* at 130.)

The ALJ's determination that jobs exist in significant numbers in the national economy that Londagin could perform inaccurately reflects Londagin's residual functional capacity. (*Id.* at 50–55.) Londagin requires frequent breaks from sitting and standing, including the need to lie down for an hour in the morning and an hour in the afternoon. (*Id.* at 505–06.) The VE's testimony establishes that these requirements render Londagin unable to work. (*Id.* at 130.) The ALJ's failure to account for the VE's testimony regarding limitations and requirements that match Londagin's circumstances constitutes legal error.

The ALJ accordingly committed the following independent errors, each constituting reversible legal error: misapplying the regulatory requirements at step

19

three; failing to consider all evidence underlying the VA's prior medical findings; providing inadequate justification for finding unpersuasive the medical opinions of Dr. Beazley, Dr. Hutcheson, and Dr. Puthiamadathil; misinterpreting non-treatment considerations to discount Londagin's testimony; and failing to account for VE testimony demonstrating that Londagin's combination of impairments ruled out work. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

## CONCLUSION

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, the Court may remand for an immediate award of benefits. *Id.* Remand for an award of benefits proves appropriate if no outstanding issues must be resolved before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ properly had credited the medical evidence. *Id.*

Remand for an immediate award of benefits proves appropriate here. The record is fully developed, and further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. The record demonstrates that the ALJ would have been required to find

Londagin disabled from June 25, 2018, had the ALJ credited properly the evidence underlying the VA's 100 percent disability rating, the medical opinion sources, and Londagin's testimony. *Beneke*, 379 F.3d at 593. The Court will reverse the Commissioner's final decision denying Plaintiff disability insurance benefits and remand for an immediate award of benefits.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion (Doc. 7) is **GRANTED**.

2. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an immediate award of benefits from June 25, 2018, through the date last insured.

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 5th day of October, 2022.

Brian Morris, Chief District Judge
United States District Court